UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARREN FINDLING, personal
representative of the estate of Joseph
Spahr,

        Plaintiff,                             Case No. 04-72385

v.                                    Honorable Nancy G. Edmunds

INTERNATIONAL TRANSMISSION
COMPANY,

        Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Darren Findling has sued International Transmission Company on behalf of Decedent Joseph Spahr. The litigation stems from Spahr's death on Defendant's property. Defendant now moves for summary judgment. For the following reasons, the Court DENIES Defendant's Motion for Summary Judgment.

**I.     Background[1]**

At about 8:30 on the morning of May 5, 2004, a painting crew employed by Morris Painting of the Youngstown, Ohio area began work on a 135-foot-tall transmission tower in Macomb Township, Michigan. Morris Painting is an independent contractor that had been hired by the owner of the tower, Defendant International Transmission Company, for the difficult paint job.

---

[1]These facts are drawn directly from the parties' briefs, which do not cite to evidence in the record. The relevant facts do not appear to be in dispute.

Plaintiff's Decedent Joseph Spahr, an employee of Morris Painting, climbed to a height of approximately ninety feet before fastening his safety lanyard to, and then stepping onto, an unsecured beam.  Apparently a bolt fastening the beam to the tower had become dislodged, as sometimes happens due to seasonal changes in weather and normal ground vibration.  When Spahr reached to paint a difficult area, the beam bent, causing Spahr's lanyard to slide off, and causing Spahr to fall to his death.

## II.    Standard of Review

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Id.* at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

2

The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice.  Rather, there must be evidence on which a jury could reasonably find for the non-moving party.  *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III.  Discussion

Plaintiff's original complaint makes three claims for relief: Negligence, nuisance *per accidens*, and construction manager malpractice.  In his Response brief, Plaintiff abandons his construction manager malpractice claim, leaving only the his nuisance *per accidens* claim and his negligence claim.  As to the latter, Plaintiff asserts a premises liability theory.

### A.  Nuisance *per accidens*

Plaintiff begins his discussion of the doctrine of nuisance *per accidens* with an accurate quotation from the Second Restatement of Torts:

> One who employs an independent contractor to do work which the employer knows or has reason to know to be likely to involve a trespass upon the land of another or the creation of a public or a private nuisance, is subject to liability for harm resulting to others from such trespass or nuisance.

Restatement (Second) of Torts § 427B.  Plaintiff relies on this section because it provides an exception to the general rule that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants."  *Id.* at 409.  Plaintiff overlooks, however, that the doctrine of nuisance *per accidens* is, as its name suggests, a nuisance doctrine.

Perhaps a few definitions would help.  Nuisance is defined as a "condition or situation (such as a loud noise or foul odor) that interferes with the use or enjoyment of property."  Black's Law Dictionary 1093 (7th Ed. 1999).  The above Restatement section refers to both public and private nuisances.  "A public nuisance is an unreasonable interference with a

3

right common to the general public." Restatement (Second) of Torts § 821B. "A public right is one common to all members of the general public. It is collective in nature and not like the individual right that everyone has not to be . . . negligently injured." *Id.* at Comment g. A private nuisance, however, is "a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Id.* at § 821D. The doctrine of nuisance *per accidens* also accounts for trespasses "upon the land of another." Trespass is defined as an "unlawful act committed against the person or property of another; esp., wrongful entry on another's real property." Black's Law Dictionary 1508 (7th Ed. 1999).

Reading Plaintiff's argument gives one the impression that Defendant's transmission tower might have fallen onto a state highway, or perhaps an unsuspecting farmer's crop of prized cherry tomatoes. But alas, it did not. The tort in this case—if indeed there was one—did not encroach upon the property rights of some nearby landowner or the general public. This story ends tragically for Joseph Spahr, and only Joseph Spahr. This is neither a case of nuisance nor a case of trespass. Plaintiff's reliance on the doctrine of nuisance *per accidens* is entirely misplaced.

### B. Premises Liability

Plaintiff argues that by permitting its transmission tower to degrade, and then failing to warn Morris Construction of the defect, Defendant breached its duty "of maintaining its premises in a reasonably safe condition and of exercising due care to prevent and to obviate the existence of a situation, known to it or that should have been known, that might result in injury." *Beals v. Walker*, 331 N.W.2d 700, 704 (Mich. 1982) (quoting *Torma v. Montgomery Ward & Co*, 58 N.W.2d 149, 153 (Mich. 1953)).) (Br. of Pl. 16.)

### 1. Independent Contractor's Purpose

4

There is an important exception to premises liability, which must first be addressed. "[A] premises owner is not liable when the independent contractor's employee comes upon the premises to correct the condition that causes the injury." *Butler v. Ramco-Gershenson, Inc.*, 542 N.W.2d 912, 919 n.6 (Mich. Ct. App. 1995) (citing *Nemeth v. Detroit Edison Co.*, 182 N.W.2d 617 (Mich. Ct. App. 1970)).   Thus, if Morris Painting was on Defendant's property to paint *and repair* Defendant's transmission tower, Defendant cannot be held liable for Joseph Spahr's death.   Although there is no written contract between Morris Painting and Defendant, several pieces of evidence shed light on this critical issue.

Kiriakos Hazimihalis, a foreman for Morris Painting, states in an affidavit that "[i]t was the policy and procedure of Morris Painting, Inc. to inspect the towers and replace bolts prior to painting the structural steel . . . ."   (Def. Ex. C.)

Fred Hudson, Morris Painting's Director of Safety, states in his deposition that Defendant had paid for replacement nuts and bolts prior to Spahr's death.   When asked whether Morris Painting had to replace nuts and bolts on Defendant's towers, Hudson answered, "It's my understanding that they had."   He said, however, that to his knowledge, Morris Painting did not have to replace the nuts and bolts on the particular tower from which Spahr fell.   (Hudson Dep. 55-56.)

Steve Sczytko, Director of Asset and Related Services for Defendant, states in his affidavit that "Morris Painting agreed to inspect the towers and make minor repairs, such as tightening and/or replacing missing bolts while painting the tower."   (Def. Ex. D.)   Mr. Sczytko does not say in his affidavit when such an agreement was made, or whether it was part of the contract between Morris Painting and Defendant.   He is more specific in his deposition, however:

5

Q: Did you understand that as part of the cost of this project there was going to be bolt replacement, or bolt supply?

A: Yes.  It's part of the cost . . . .

Q: [A]nd up until the time that Mr. Spahr got killed, that cost was paid for by International Transmission Company, correct?

A: The—when we selected the Morris Painting Company, they indicated that as part of their process they routinely replaced nuts and bolts that were missing from towers, and it was all incorporated into whatever cost we agreed to on a per unit basis.

(Sczytko Dep. 41-42.)

The above evidence suggests that there was in fact an agreement that Morris Painting would replace nuts and bolts on Defendant's towers.  But the issue is made more difficult by a letter signed on May 7, 2004—two days *after* Joseph Spahr's death—by the President of Morris Painting:

Per the meeting conducted on May 6, 2004 . . . we agree and submit to the following changes and/or inclusions:

Prior to painting . . . the crews of Morris Painting, Inc. will climb these structures to inspect them for any structural problems . . . .  Those missing loose or damaged nuts and bolts will be replaced or tightened . . . .

These implementations will incur some delays in the painting process of the structures . . . .  We are therefore requesting consideration for additional compensation . . . .  Please note that this add on becomes effective on May 7, 2004.

(Pl. Ex. C.)

Taken in its entirety, the evidence does not resolve whether Morris Painting had "come upon the premises to correct the condition that causes the injury."  This is a close question of fact, for which summary judgment is inappropriate.  Even assuming, however,

6

that there was *no* agreement for repair work at the time of Spahr's death, the question

remains whether Defendant breached its duty of care to business invitees.

### 2. Duty of Care

Michigan law follows the rule of premises liability set out in the Second Restatement

of Torts:

> A possessor of land is subject to liability for physical harm caused to his
> invitees by a condition on the land if, but only if, he (a) knows or by the
> exercise of reasonable care would discover the condition, and should realize
> that it involves an unreasonable risk of harm to such invitees, and (b) should
> expect that they will not discover or realize the danger, or will fail to protect
> themselves against it, and (c) fails to exercise reasonable care to protect
> them against the danger.

*Riddle v. McLouth Steel Prods. Corp.*, 485 N.W.2d 676, 680 (Mich. 1992) (quoting

Restatement (Second) of Torts § 343).[2]  Put another way,

> A premises owner has a duty to exercise reasonable care to protect invitees,
> i.e., persons who enter the premises at the owner's express or implied
> invitation to conduct business concerning the owner, from an unreasonable
> risk of harm caused by a dangerous condition of the land that the owner
> knows or should know the invitees will not discover, realize, or protect
> themselves against.

*Butler*, 542 N.W.2d at 918.  "This duty of care generally extends to invitees who are

employees of independent contractors."  *Id.*

*Butler*, a factually similar case, provides an apt example.  The plaintiff in that case was

employed by a masonry contractor, which the defendant had hired to replace bricks in the

outer wall of its building.  As the plaintiff worked below, two unstable pieces of concrete

---

[2]The court in *Riddle* notes that this statement is based on a version of the Restatement
that has been revised.  485 N.W.2d at 680 n.7.

coping block, which were not the subject of the masonry contract, fell from the defendant's roof and injured the plaintiff.

The court discussed the theory of premises liability as follows:

[I]nvitors may be held liable for an invitee's injuries that result from a failure to warn of a hazardous condition or from the negligent maintenance of the premises or defects in the physical structure of the building.

The premises owner must inspect the premises to discover possible defects. The premises owner's duty to warn includes the duty to warn of hidden or latent defects of which the premises owner knows or ought to know and of which the invitee is not aware. However, a premises owner does not owe a duty to protect invitees where conditions arise from which an unreasonable risk cannot be anticipated.

542 N.W.2d at 919-20 (internal citations and quotations omitted). Based on these principles, the *Butler* court held that the plaintiff had stated a valid cause of action against the defendant landowner on a premises liability theory.

Next, the court analyzed the available facts, which showed that the defendant had been put on notice "that moisture had infiltrated through the coping and caused damage to the brickwork." *Id.* at 920. The court found that "a question of fact existed concerning whether defendants should have known of the existence of the risk that the coping might fall." *Id.*

The present case exhibits a number of similar fact questions needing resolution. For example, did "reasonable care" require Defendant to climb a 135-foot transmission tower in search of structural defects? Should Defendant have realized the risk that such defects would pose? Should Defendant have expected Morris Painting to discover the defects on its own, and to take appropriate precautions?

8

The parties present some evidence on these issues.  Defendant was aware, for example, that "over a period of time, regardless of whether the cause was inclement weather or vibration or something else, there were nuts and bolts that were missing . . . ." (Hudson Dep. 56.)   On the other hand, Morris Painting is a professional contractor specializing in painting towers such as Defendant's, and has full knowledge of the dangers posed by these jobs.  As indicated above, Morris Painting routinely replaced nuts and bolts on the towers it was painting (whether or not it *agreed* to do so in this case).

The Parties have presented no authority resolving these questions under Michigan law.  As in *Butler v. Ramco-Gershenson*, therefore, they shall be put to a jury.

## IV.  Conclusion

For the above reasons, the Court DENIES Defendant's Motion for Summary Judgment.  While Plaintiff's claim of nuisance *per accidens* is meritless, Plaintiff has a viable claim based on a theory of premises liability.  If Morris Painting's purpose on Defendant's premises was not to replace missing bolts and nuts from Defendant's transmission tower, and if Defendant breached its duty of care to invitees as discussed above, then Defendant may be liable for Joseph Spahr's death.

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby DENIES Defendant's Motion for Summary Judgment.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  December 19, 2005

9

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 19, 2005, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager